UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THOMAS COOK, Special Representative of the )
Estate of ATC, )
       Plaintiff, )
       )
      v. )       CAUSE NO.: 2:10-CV-411-PRC
       )
DAVID LAIN, Sheriff of Porter County, )
in his individual and official capacities, )
       Defendant. )

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 40], filed

by Defendant David Lain, Sheriff of Porter County, Indiana ("Sheriff Lain"), on September 28,

2012; a Motion to Strike Report of Stephen B. Hanauer [DE 46], filed by Plaintiff Thomas Cook,

Special Representative of the Estate of ATC, on October 31, 2012; and Defendant's Motion to Strike

Certain Exhibits and Portions of Plaintiff's Response in Opposition to Defendant's Motion for

Summary Judgment [DE 52], filed by Sheriff Lain on November 21, 2012. For the reasons set forth

in this Opinion and Order, the Court grants summary judgment in favor of Defendant Sheriff Lain

on Plaintiff's § 1983 claims but declines to exercise supplemental jurisdiction over the state law

negligence claim, remanding the case to state court on that claim.

## PROCEDURAL BACKGROUND

Plaintiff Thomas Cook, as Special Representative for the Estate of ATC, deceased, filed a

Complaint against Defendant Sheriff Lain and Defendant Porter County, Indiana in the Porter

County, Indiana Superior Court on September 17, 2010. Defendants removed the case to this Court

on October 14, 2010, and filed an Answer and a Motion to Dismiss on October 21, 2010. On

November 10, 2010, Plaintiff filed a Motion to Amend Complaint, which the Court granted on November 30, 2010. Plaintiff filed the Amended Complaint on December 2, 2010.

On December 14, 2010, Defendant Porter County, Indiana filed a Motion to Dismiss, to which Plaintiff filed no response. The Court granted the motion on January 24, 2011, dismissing Defendant Porter County, Indiana.

On June 1, 2011, Plaintiff filed a Second Motion to Amend Complaint, which the Court granted on June 23, 2011. On July 13, 2011, Plaintiff filed the Second Amended Complaint against Sheriff Lain. Therein, Plaintiff alleges that Sheriff Lain refused to transfer Alan T. Cook ("Cook"), the decedent son of Plaintiff, to the Indiana Department of Correction ("IDOC"). Plaintiff further alleges that Sheriff Lain, individually and through his staff, was negligent in the medical care provided to Cook during his detention at the Porter County Jail. Plaintiff alleges that Sheriff Lain deprived Cook of his constitutional rights under the Eighth Amendment to the United States Constitution when he failed to provide reasonable medical care to Cook during his detention. Specifically, Plaintiff alleges that Cook was not provided with proper medical care at the Porter County Jail from August 29, 2009, through September 20, 2009.

In the caption of the Second Amended Complaint, Plaintiff inadvertently failed to remove previously-dismissed Defendant Porter County, Indiana. There are no allegations in the Second Amended Complaint against Defendant Porter County, Indiana. Therefore, the Court will direct the Clerk of Court to show the case terminated as to Defendant Porter County, Indiana as of January 24, 2011.

On September 28, 2012, Sheriff Lain filed the instant Motion for Summary Judgement and Memorandum in Support. Plaintiff filed a response on November 1, 2012, and Sheriff Lain filed a reply on November 21, 2012.

On October 31, 2012, Plaintiff filed the instant Motion to Strike Report of Stephen B. Hanauer. Sheriff Lain filed a response on November 21, 2012. Plaintiff did not file a reply.

On November 21, 2012, Sheriff Lain filed the instant Motion to Strike Certain Exhibits and Portions of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. Plaintiff filed a response on December 17, 2012, and Sheriff Lain filed a reply on December 21, 2012.

The parties orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MOTIONS TO STRIKE

### A. Plaintiff's Motion to Strike the Report of Stephen B. Hanauer

Plaintiff asks the Court to strike the expert report of Dr. Stephen B. Hanauer proffered by Sheriff Lain. As argued by Sheriff Lain, the motion is untimely. On July 11, 2011, the Court issued an order modifying the discovery and dispositive motion deadlines in this case. The Court set a deadline of June 29, 2012, for Defendant to deliver expert disclosures to Plaintiff and a deadline of September 28, 2012, for the filing of *Daubert* motions. However, Plaintiff filed the instant *Daubert* motion on October 31, 2012. Plaintiff did not seek an extension of the *Daubert* motion deadline, nor did Plaintiff seek leave of Court to file his motion after the deadline. Notably, Plaintiff did not

file a reply brief in support of this motion.  Accordingly, the Court denies Plaintiff's Motion to Strike.

### B.  Defendant's Motion to Strike Exhibits and Portions of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment

Sheriff Lain asks the Court to strike Exhibits F, G, H, and I submitted by Plaintiff in support of his Response in Opposition to Defendant's Motion for Summary Judgment because the four documents were not disclosed during discovery.  Sheriff Lain also asks the Court to strike Exhibits F, G, and H as inadmissible.  Exhibits F, G, and H are newspaper articles, and Exhibit I is a United States Department of Justice Intergovernmental Service Agreement.

The Court strikes all four exhibits on the basis that they were not disclosed during discovery. Plaintiff did not include Exhibits F, G, H, and I in his Federal Rule of Civil Procedure 26(a)(1) initial disclosures served on Sheriff Lain on January 14, 2011.  On May 9, 2011, Plaintiff served Sheriff Lain with his Responses to Defendant's First Request for Production of Documents and did not include any of Exhibits F, G, H, or I in the document production.  The deadline to complete fact discovery was February 29, 2012, and Plaintiff did not disclose the four exhibits prior to that deadline.  Sheriff Lain represents that, at no time has Plaintiff served him with supplemental discovery or otherwise provided him with copies of Exhibits F, G, H, and I or notified him of his intent to use these Exhibits as evidence in his case.  Rather, Sheriff Lain represents that the first time he learned of these Exhibits was when he received Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment on October 31, 2012.  Plaintiff provides no response to this argument and, thus, offers no explanation, justification, or exception for allowing evidence not disclosed during discovery.

Federal Rule of Civil Procedure 37(c)(1) provides:

**(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

**(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(i)-(vi) lists the following sanctions:

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party;

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

Finding that Plaintiff failed to disclose Exhibits F, G, H, and I during the course of discovery, the Court imposes the sanction of prohibiting Plaintiff from introducing Exhibits F, G, H, and I in evidence, striking Exhibits F, G, H, and I offered in support of Plaintiff's response brief and striking those portions of section I(B) of Plaintiff's response brief found at pages 5 and 6 related to Exhibits F, G, H, and I. Although it is unnecessary for the Court to rule on Defendant's alternative objections to Exhibits F, G, and H on the basis that they are inadmissible hearsay, it appears that the statements made by Defendant Lain that are quoted in the newspaper articles fall within the hearsay exception for statements of a party opponent under Federal Rule of Evidence 801(d)(2).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254,

1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not

to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

**MATERIAL FACTS**

**A. Arrest and Detention**

On or about March 6, 2009, Alan T. Cook was arrested on multiple charges involving a domestic battery; he was detained at the Porter County Jail.[1]  Cook pled guilty to several charges and, on August 17, 2009, was sentenced to eight years in prison.  On or about September 17, 2009, Cook was transported from the custody of the Porter County Jail to the custody of the IDOC.

**B. Medical Care Provided to Detainees in the Porter County Jail in 2009**

In 2009, medical staff worked at the Porter County Jail seven days a week from 6:00 a.m. to 10:00 p.m.  Registered Nurse Kim White became the Medical Director at the Jail in July 2009. As a registered nurse and the Medical Director of the Jail, White's duties are to provide medical care and treatment to all inmates housed at the Jail, to oversee the care that is given to inmates by the licensed practical nurses and medical assistants working at the Jail, and to assist the physician who cares for the inmates at the Jail.

In 2009, Dr. John Collier provided medical care to the Jail's detainees on a regular weekly and on-call basis.  From 10:00 p.m. through 6:00 a.m., both White and Dr. Collier were on call. Between those hours, any Jail staff could contact either White or Dr. Collier to answer medical questions or to provide instructions on how to handle any medical condition that might have arisen.

---

[1] The facts are taken from statements of fact presented by both parties that are supported by admissible evidence attached to the parties' briefs.  The Court disregards evidence attached but not cited as well as statements that are comprised of legal argument, that are unsupported by citation to admissible evidence, or that are supported by citation to evidence not submitted to the Court.

## C.  Cook's Medical Treatment

1.  *Cook's Booking into the Jail on March 6, 2009*

On March 6, 2009, at approximately 9:15 a.m., Cook was arrested in Portage, Indiana.  On March 6, 2009, Cook arrived at the Porter County Jail at approximately 10:00 a.m.  During the booking process, all detainees of the Jail are given a medical screening.  During the screening process, detainees are asked to provide information about their health.  Cook informed the intake officer that he was allergic to penicillin and had an irregular heartbeat, a heart murmur, and anxiety.  He informed the officer that he was a heroin user and would experience withdrawal, and he complained of having the flu.

2.  *Cook's Medical Treatment at the Porter County Jail from August 29, 2009 through September 17, 2009*

Plaintiff's Second Amended Complaint complains specifically of the medical care that was given to Cook beginning on and after August 29, 2009.  On August 29, 2009, Cook requested to be seen for a bump on his buttock that was creating pressure and swelling.  He was placed in medical isolation because it involved an open sore.  Dr. Collier prescribed Bactrim to treat the open sore.  On September 1, 2009, Cook reported he was vomiting and believed that he was experiencing an intolerance to Bactrim.  Dr. Collier stopped the Bactrim at Cook's request and prescribed the antibiotic Doxycycline.  He also prescribed Imodium to treat the gastric upset.

Cook remained in medical isolation from August 29, 2009, through September 6, 2009, as he was complaining of diarrhea.  Cook continued to be monitored by medical staff.  His vital signs were taken frequently.  He was given Gatorade per the instructions of White to provide electrolytes and sustenance due to his reports of diarrhea and vomiting.  Cook did not show any signs of dehydration.

On September 6, 2009, medical staff observed that the wound on Cook's buttock had healed. Beginning on September 7, 2009, Dr. Collier requested that the medical staff check inmate Cook's weight on a daily basis due to his persistent reports of vomiting and diarrhea. His weight was tracked and revealed some fluctuation. Dr. Collier did not feel that Cook's weight loss called for a complete change in treatment. Dr. Collier felt that there was nothing to show that Cook was in critical condition and that there was nothing critical about Cook's weight loss. Regardless of Cook's weight loss, Dr. Collier believed that it was advisable to continue the course of treatment.

On September 8, 2009, Cook was put on a BRAT diet (bananas, rice, applesauce, and toast). Though medical staff encouraged Cook to remain on the BRAT diet to ease his gastric upset, Cook refused meals multiple times and declined to eat the prescribed diet. Cook continued to decline to follow the doctor's orders and the instruction of the medical staff.

From August 29, 2009, through September 8, 2009, Cook refused medications on more than 15 occasions. He intermittently refused Tylenol, which was given to treat his complaints of gastric discomfort. He intermittently refused Omeprazole and Imodium, which were prescribed to treat his reported nausea and diarrhea.

On September 9, 2009, Cook informed the medical staff that he wanted to stop all medications. Cook was again seen by Dr. Collier on September 14, 2009. Dr. Collier diagnosed Cook with non-specific gastroenterocolitis based on the symptoms that Cook was reporting. Dr Collier felt that there were no glaring concerns that required aggressive treatment. Dr. Collier explained that Cook had a history of drug use, which could also lead to the types of symptoms he was reporting. Additionally, Dr. Collier believed that Cook's non-compliance with his treatment and the recommendations of the medical staff may have contributed to the prolonging of his

symptoms.  Dr. Collier stated that his course of treatment for Cook might have changed if Cook had been compliant with the treatment that was prescribed by him and other members of the medical staff.

On September 15, 2009, White again encouraged Cook to continue on a BRAT diet, but Cook informed White that he wanted to eat the regular meals that were being offered.  Cook also refused to give up junk food items from the commissary after being informed that they would not be good for his digestion.  Dr. Gregory Gramelspacher testified that he did not see any record from Porter County Jail of a comprehensive metabolic profile that would have tested Cook's albumin level.

3.    *Medical Treatment After Leaving the Custody of the Porter County Jail*

Before detainees are assigned to a particular correctional facility in the IDOC, they go through the Reception Diagnostic Center ("RDC").  On September 17, 2009, Cook was transported to the RDC, where Dr. Gallien reported to Dr. Malak Hermina that Cook was "very sick and he needs to go to your infirmary. He has diarrhea and we need to give him IV fluids."  Dr. Hermina agreed that Cook should be transported to the emergency room, and Cook was taken to the emergency room at Wishard Memorial Hospital ("Wishard") for his continued complaints of vomiting and diarrhea.  Cook was released from Wishard to the Plainfield Correctional Facility ("Plainfield") that same day with a diagnosis of vomiting and diarrhea and was instructed to follow up with an internal medicine specialist in 6-10 days.  Cook was admitted to Wishard from September 21, 2009, through September 25, 2009.  During that admission, Cook underwent a colonoscopy. When Cook was discharged from Wishard back to Plainfield on September 25, 2009, his condition

was "stable," and he had no acute issues. The plan was to increase oral intake with a high fiber diet and supplements. The discharge diagnosis was abdominal pain.

On September 27, 2009, Cook was again taken to the emergency room at Wishard with complaints of swelling in the lower extremities, abdominal pain, and diarrhea. Cook was sent back to Plainfield that day to await an appointment with a gastroenterologist.

Cook was first seen by Dr. Malak G. Hermina at the Plainfield infirmary on September 29, 2009. Dr. Hermina's assessment that day was chronic diarrhea with a CT scan that showed possible Crohn's disease. When Cook was treated on September 29, 2009, Cook was not on steroids. Dr. Hermina wanted to rule out any other cause of infection before treating Cook with steroids because steroids cannot be given to someone with an infection. The medications that Cook was taking on September 29, 2009, were not for treatment of Crohn's in particular because the diagnosis was not specifically Crohn's at that time.

When Dr. Hermina first saw him, Cook was mildly to moderately sick. Dr. Hermina wanted to find out why Cook had diarrhea. Dr. Hermina explained that, if someone presents with diarrhea without fever and toxic symptoms, it is most likely viral or food allergy; the individual is given fluids and asked to come back in seven days. Dr. Hermina explained that diarrhea for three weeks is considered acute and that a doctor usually does not intentionally "work up" acute diarrhea unless it persists for more than four weeks, at which point the diarrhea is considered chronic. The standard of care for diarrhea is not to do an extensive "work up" unless it becomes chronic.

On October 1, 2009, Cook reported that he was no better and no worse than when he entered the RDC on September 17, 2009. Intravenous fluids were discontinued per Cook's request. Cook was again admitted to Wishard on October 2, 2009, and was discharged on October 17, 2009. The

discharge diagnoses were chronic diarrhea, probable inflammatory bowel disease, right upper extremity deep vein thrombosis, malnutrition, hypoalbuminemia, peripheral edema, leukocytosis, anemia, and hypokalemia. At that point, doctors still did not know with certainty the cause of Cook's inflammatory bowel disease. Cook had received a peripherally inserted central catheter ("PICC line") at the Plainfield Infirmary two days prior to his October 2, 2009 admission to Wishard. Two days after the admission, he developed left upper extremity edema.

As of October 22, 2009, Cook still had diarrhea five times a day. Total parenteral nutrition ("TPN"), which is administered through a PICC line or a central vein, was discussed with Cook but he declined, preferring an oral feeding trial.

On October 26, 2009, Cook was transferred and admitted to Wishard for a third time because the doctors at Plainfield determined that he required hospital care.[2] The diagnoses at the time of admission included malnutrition and inflammatory bowel disease; Cook was on Remicade and steroids. He was also placed on TPN. In his deposition, Dr. Samir Kumar Gupta explains that TPN is used to restore nutrition. He opined that the fact that nutrition was given through the PICC line means that "the malnutrition is so severe that that is the best option to restore nutrition because it's risky to put in a PICC line . . . . [Y]ou don't want to use TPN if you can use the gut. So in this case, he couldn't use the gut." Pl. Resp., Exh. D, p. 50.

During this hospital admission, Cook was finally diagnosed with Crohn's disease and started on chronic steroid therapy to treat the disease. As of October 26, 2009, Cook was positive for

---

[2] Plaintiff cites a portion of Dr. Hermina's deposition in which Dr. Hermina reads from Cook's records: "will send to Wishard Memorial Hospital for admission and work-up involving hematology/GI/supportive care/close monitoring his electrolyte/too sick and complicated to be handled at the Prison infirmary without a clear diagnosis." Pl. Resp., Exh. B, p. 40. However, pages 39 and 41 are not submitted to the Court, and it is not clear from the pages that are submitted which of Cook's admissions to Wishard Dr. Hermina was reading about in this excerpt.

methicillin-resistant Staphylococcus aureus, or MRSA. MRSA is a bacteria that can be found anywhere on a person's skin and is a typical condition that patients develop in a hospital environment. Cook was discharged from Wishard on November 6, 2009.

Cook returned to Plainfield on November 7, 2009, and was placed in isolation due to the history of MRSA. On November 11, 2009, Cook began to refuse his TPN. Dr. Hermina spent time educating Cook on why he had to be compliant. Dr. Hermina explained in his deposition that the nutrition going through the PICC line is indirectly used to maintain or eradicate a MRSA infection in the blood by improving his overall condition.

As of November 12, 2009, Cook was refusing TPN, steroids, and potassium. Dr. Hermina testified that part of the reason Cook's condition was deteriorating was because he was refusing medications. As of November 15, 2009, Cook refused to have his dressings changed, refused TPN, and refused calcium carbonate. Dr. Hermina was concerned that Cook was not getting better and was not taking his steroids, Remicade, or TPN. Cook had showed some improvement when he started the steroids. He decreased this improvement by refusing to take the taper steroids and other supportive care. As of November 16, 2009, Cook was refusing to eat, take medications, take TPN, and drink Ensure. As of November 20, 2009, Cook was dehydrated due to his refusal of TPN and IV fluids and poor oral intake. By refusing to take his medications, Cook was contributing to the deterioration of his condition. As a result, Dr. Hermina requested that Cook be transferred to Wishard on November 23, 2009.

Cook was readmitted to Wishard on November 23, 2009. Dr. Gupta stated in his deposition that, on November 23, 2009, Cook's severe illness was attributed to overwhelming infection due to MRSA. He testified that Cook's MRSA condition was worse from October 26, 2009, to November

23, 2009. As of November 23, 2009, Cook had bacterial sepsis, which was attributed to MRSA. Dr. Gupta opined that Cook's MRSA sepsis could have been introduced into Cook's body through IV drug use in the foot area. He also explained that Crohn's disease itself can cause sepsis. Dr. Gupta expressed the possibility that the PICC line that had been placed in Cook at the Plainfield infirmary could have lead to the MRSA sepsis. Dr. Gupta also testified that it was more likely that the MRSA was introduced through the PICC line than through his feet from injection drug use. According to Dr. Gupta, the etiology of Cook's MRSA sepsis was unknown to him on November 24 and November 25, 2009.

At some point while at Wishard, Cook was seen by Dr. Gramelspacher, who testified that, by the time he saw Cook, Cook was extremely malnourished based on his albumin level of 1.0.[3]

Dr. Buckley testified at his deposition that the Crohn's disease itself predisposed Cook to infection. At the time of the November 23, 2009 admission at Wishard, the treatment note indicates that Cook's Crohn's disease was only mildly controlled. Dr. Buckley explained that Cook's malnutrition was linked to his Crohn's disease because when there is inflammation of the colon it is difficult to take in nutrition and absorb it.

Dr. Buckley felt that Cook's condition was likely due entirely to his Crohn's and to the additional staph bacteremia because Cook's level of malnutrition and chronic reoccurring problems and re-admissions were progressively getting worse. He believed that Cook's Crohn's disease was progressing because Cook was in and out of the hospital multiple times and his condition seemed

---

[3] In his brief, Plaintiff cites Dr. Gramelspacher's deposition for the testimony that "by the time I saw him, his albumin was 1.0, which is extremely malnourished." Pl. Resp, Exh. D, p. 57. However, only pages 1-4, 49-52, and 57-60 of Dr. Gramelspacher's testimony have been submitted by Plaintiff. The Court has reviewed these pages and has not discovered any reference to when Cook was seen by Dr. Gramelspacher or when his albumin level was 1.0.

to be getting worse.  Dr. Buckley testified that the medication used to treat Crohn's puts him at risk for infection.

On November 26, 2009, Cook died at Wishard.  The cause of death given on the Wishard Discharge Summary is "multiorgan system failure due to MRSA line infection from chronic RUE PICC line."  Pl. Resp., Exh. J.

### D.  Expert, Dr. Stephen B. Hanauer

Dr. Stephen B. Hanauer is the Chief of the Section of Gastroenterology, Hepatology and Nutrition at the University of Chicago Medical Center.  Dr. Hanauer is Board Certified by the American Board of Internal Medicine and the American Board of Gastroenterology.

In preparation of a report at Sheriff Lain's request, Dr. Hanauer reviewed the following materials: Second Amended Complaint by counsel, Patrick B. McEuen; Cook's medical records from Porter County Jail; a resume of medical/jail records from the Jail; Cook's medical records from Wishard Health Services; a resume of Records from Wishard Health Services; Cook's medical records from the IDOC; a medical chronology of records from the IDOC; a resume of records from the IDOC; records from the Marion County Coroner's Office; a resume of Records from the Marion County Coroner's Office; and the deposition manuscripts of Dr. Buckley, Dr. Gramelspacher, Dr. Gupta, and Dr. Hermina.

In his report, Dr. Hanauer opined that there were no breaches in the standard of care provided to Cook while he was an inmate at Porter County Jail.  Dr. Hanauer opines that Cook was treated appropriately for the most common causes of his "non-specific" gastrointestinal symptoms. Dr. Hanauer believes that Cook exhibited signs and symptoms of Crohn's disease beginning on August 29, 2009, but disagrees that these signs and symptoms required "Chronic Care."

According to Dr. Hanauer, Crohn's disease can present with "non-specific" symptoms related to the digestive tract including abdominal pain, nausea, vomiting, diarrhea, bleeding, weight loss, and non-intestinal symptoms including fevers, joint pains or arthritis, or certain skin lesions. However, any of these symptoms, alone or in combination, are more commonly than not attributable to more common disorders such as irritable bowel syndrome, food poisoning, viral gastroenteritis, food intolerance, stress, etc. Furthermore, the average duration of symptoms prior to the diagnosis of Crohn's disease in the general public is months to years.

Dr. Hanauer noted that, although Cook was transferred to the IDOC and had multiple emergency room visits and admissions to Wishard where he received extensive evaluations, the diagnosis of Crohn's disease was not determined until sometime in October 2009, after the transfer to the IDOC on September 17, 2009, at which time specific treatments were initiated (i.e. steroids and, eventually, Remicade).

It is Dr. Hanauer's opinion that the Wishard personnel could have made the diagnosis and initiated aggressive treatment based on the September 20, 2009 admission and that appropriate and accepted, medical, nutritional, surgical, and supportive therapy would have provided relief for his medical condition that, more likely than not, would have prevented his demise from a septic complication related to the profound complications related to both complications and treatment of his Crohn's disease. It is Dr. Hanauer's opinion that sepsis due to the PICC line administered by the IDOC was the ultimate cause of death. Further, it is his opinion that even had Cook been diagnosed several weeks earlier and received the same medical care and attention that he eventually received from the IDOC and Wishard, and with the same degree of compliance with such care, that it is more probable than not that he would have succumbed to a similar fate. Finally, it is Dr.

Hanauer's opinion that nothing that Porter County Jail did caused or contributed to Cook's sepsis or his death. All of Dr. Hanauer's opinions were rendered to a reasonable degree of medical certainty.

### E. Communications at the Porter County Jail Regarding Cook's Medical Condition

Plaintiff spoke to Porter County Jail Warden John Widup ("Warden Widup") approximately five times during Cook's pretrial detention and post-sentence detention at Porter County Jail, each time stating that Cook was afraid and needed medical care and requesting a transfer for Cook. Some of these conversations took place on August 17, August 31, September 7, and September 14, 2009. On or about August 17, 2009, Plaintiff spoke to Warden Widup and voiced his concerns over his son's health. He asked Warden Widup if Cook could be transferred to the IDOC so that he could get better medical care. Plaintiff states in his Affidavit that, either during that conversation on August 17, 2009, or during a prior conversation, Warden Widup said, "Sometimes prisoner's[sic] fake to get to prison early." Pl. Br., Exh. K, ¶ 5. Between August 17 and September 17, 2009, Warden Widup, Assistant Ron Gaydos, and White did not respond to at least eight requests by Plaintiff that Cook receive different or better care in an infirmary setting to deal with his malnutrition and dehydration issues.

Plaintiff had one or two conversations with Assistant Warden Ron Gaydos (hereinafter "Gaydos") on the phone about his son's health. During a telephone conversation, Plaintiff asked Gaydos if his son could be transferred to the IDOC. Plaintiff had more than one conversation with Medical Director Kim White about his son's health.

Plaintiff never had any conversations with Sheriff Lain. Plaintiff does not have any actual knowledge that any of the Jail staff that he had conversations with about his son spoke to Sheriff

Lain about those conversations. Warden Widup did not inform Sheriff Lain that he had conversations with Plaintiff, nor did Warden Widup discuss with Sheriff Lain the content of those conversations. Gaydos did not inform Sheriff Lain that he had conversations with Plaintiff, nor did he discuss with Sheriff Lain the content of those conversations. White never had any conversations with Sheriff Lain about Cook or his medical condition. White did not inform Sheriff Lain that she had conversations with Plaintiff, nor did she discuss with Sheriff Lain the content of those conversations. Dr. Collier never had any conversations with Sheriff Lain about Cook or Cook's medical condition.

Sheriff Lain never had any conversations with any Porter County Jail staff regarding Plaintiff or Cook's medical condition or medical treatment, Cook's desire to be transferred to a different facility, or any other topics whatsoever.

Sheriff Lain has no knowledge of the conversations that allegedly took place between Plaintiff and members of the Jail staff, including, but not limited to, Warden Widup, Gaydos, and White. Sheriff Lain was never consulted regarding the medical care of Cook at the Porter County Jail. Sheriff Lain states that he had no involvement with Cook's medical treatment at the Jail, was unaware of any of Cook's alleged medical complaints, and did not make any decisions pertaining to Cook's medical care.

Sheriff Lain relied on the medical staff at the Porter County Jail to assess the needs of Cook and to prescribe any treatment that he may have required. Warden Widup and Assistant Warden Gaydos were aware at all relevant times that Cook was receiving medical care from the medical staff at the Jail. Sheriff Lain never represented to Dr. Collier, White, Warden Widup, or Gaydos that he thought that Cook was "faking" an illness.

### F. Transfer Procedures at the Porter County Jail in 2009

The Porter County Jail houses both detainees who are awaiting sentencing and detainees who have been sentenced and are awaiting transfer to the IDOC to serve their sentences. Sheriff Lain states in his Affidavit that he does not have the authority or ability to force the IDOC to take custody of a detainee who has been sentenced and is awaiting transfer. Sheriff Lain does not have the authority or ability to "opt" to retain custody of a detainee who would otherwise be transferred to the IDOC. Sheriff Lain never made any decisions whatsoever regarding the transfer of Cook to any other facility, nor did he "opt" to retain him at the Jail. Sheriff Lain testifies that the Porter County Sheriff's Department does not have any policies, express or otherwise, to retain custody of detainees who would otherwise be transferred to the IDOC. Neither Warden Widup nor the Assistant Warden has the ability to force the IDOC to take custody of a detainee. Neither the Warden nor the Assistant Warden has the ability to opt to retain a detainee who would otherwise be transferred to the IDOC.

## ANALYSIS

Sheriff Lain seeks summary judgment in his favor on all of Plaintiff's constitutional claims against him in his individual and official capacities for allegedly failing to transfer Cook and for allegedly denying Cook medical care while detained in the Porter County Jail. Sheriff Lain also seeks summary judgment on Plaintiff's Indiana state law negligence claim. Although Cook's death, like any death, is tragic, Plaintiff has failed to demonstrate a genuine issue of material fact that Sheriff Lain, the sole named defendant in this cause of action, is liable either in his official or individual capacity for Cook's death. The Court considers each of Plaintiff's claims in turn.

## A. Transfer to the Indiana Department of Correction

Plaintiff alleges in the Second Amended Complaint that Sheriff Lain refused to transfer Cook to the IDOC and alleges that this failure to transfer was the result of an unconstitutional policy and also the result of Sheriff Lain's exercise of his discretion. In the Motion for Summary Judgment, Sheriff Lain contends that Plaintiff is alleging that Cook suffered a deprivation of his rights under the Eighth Amendment of the Untied States Constitution based solely on a right to transfer. The Court does not read this claim in the Second Amended Complaint; rather, the allegations regarding the failure to transfer appear to be offered in support of Plaintiff's claim that Cook suffered a deprivation of his rights under the Eighth Amendment because Sheriff Lain was deliberately indifferent by failing to provide Cook with reasonable medical care or chronic care during his incarceration at the Porter County Jail. This reading is confirmed by Plaintiff's lack of response in support of a separate constitutional claim for failure to transfer. Nevertheless, out of an abundance of caution, the Court considers Sheriff Lain's arguments that a prisoner does not have a constitutionally protected right to be transferred from one facility to another; that he did not and could not "opt" to either retain custody or transfer custody of Cook; and that Plaintiff has failed to set forth a genuine issue of material fact that the Porter County Sheriff's Department had a custom, policy, or practice of failing to transfer inmates in violation of their constitutional rights.

42 U.S.C. § 1983 provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del. Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 749 n. 9 (1999) (quotation omitted). A cause of action may be brought under § 1983 against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must show (1) that he "was deprived of a right secured by the Constitution or federal law" (2) "by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

"[A] prisoner does not have a constitutionally protected right, interest, or expectation to be transferred from one facility to another within a correctional system merely by requesting one." *Burr v. Duckworth*, 547 F. Supp. 192, 197 (N.D. Ind. 1982). "[T]he Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Martin v. Jackson*, 21 F. App'x 443, 446 (7th Cir. 2001); *Watson v. Cohn*, 980 F.2d 733, 1992 WL 357216, *3 (7th Cir. Dec. 3, 1992). Additionally, "[t]here is . . . no Constitutional mandate that a state have a statewide prison system or that if a state has established a prison system that a convicted prisoner must serve his time in a state-operated prison rather than in a county jail." *Jackson v. Books*, No. 3:10-CV-148, 2010 WL 2540486, *1 (N.D. Ind. June 14, 2010); *see also Batchelder v. Donahue*, No. 2:07-CV-313, 2007 WL 3256832, *2 (N.D. Ind. Nov. 5, 2007). Once a prisoner has been convicted, "the initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause." *Batchelder*, 2007 WL 3256832, at *2 (quoting *Meachum*, 427 U.S. at 224). Cook did not have a constitutional right to be transferred from Porter County Jail to the IDOC even though he was eligible to be transferred after he was convicted and sentenced. Moreover, the undisputed facts establish that Sheriff Lain did not have the authority to opt to retain custody of detainees or force their transfer to the IDOC.

As for the claim against Sheriff Lain in his individual capacity, even if Cook had a constitutional right to be transferred, Plaintiff has failed to raise a genuine issue of material fact that Sheriff Lain was personally involved in the alleged violation. "Liability under the Civil Rights Act requires a defendant's personal involvement in the alleged constitutional violation." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, to be liable under §1983, an individual defendant must have caused or participated in the constitutional deprivation." *Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2008) (citing *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)); *see also Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (finding that the district court did not err in denying the sheriff's motion for jnov because the sheriff knew of the actions of his subordinates that resulted in the constitutional violation and because he failed to take any preventative action such that there existed the requisite affirmative link between the sheriff and the constitutional violation).

The undisputed evidence, viewed in the light most favorable to Plaintiff, is that Sheriff Lain did not make a decision regarding the requested transfer of Cook or "opt" to retain Cook at the Porter County Jail. Nor was Sheriff Lain personally aware that such requests were being made by Plaintiff; Sheriff Lain had no knowledge of Cook's desire to be transferred or the requests for transfer that were made to other members of the Jail's staff. Though Plaintiff had conversations with other members of the Jail's staff about a transfer to IDOC, he admits that he never spoke to Sheriff Lain himself. Sheriff Lain never had any conversations with Plaintiff or Cook regarding a desire to have Cook transferred to IDOC. None of the members of the Jail staff ever informed Sheriff Lain of Plaintiff or Cook's desire to have Cook transferred to IDOC.

Finally, as to the claim against Sheriff Lain in his official capacity, even if Cook had a constitutional right to be transferred, Plaintiff has failed to offer any facts to demonstrate a genuine issue of material fact that the Porter County Sheriff's Department had a policy of refusing to transfer inmates in violation of their constitutional rights. This official capacity claim, which, practically, is a claim against the Porter County Sheriff's Department, is governed by the municipal liability standards set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Monell*, 436 U.S. at 694. To establish the liability of a municipality for the constitutional deprivation, a plaintiff must demonstrate:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006)). "In cases asserting an implicit policy or a gap in express policy, 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, (7th Cir. 2007) (quoting *Phelan*, 463 F.3d at 790 (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005))).

Sheriff Lain stated in his Affidavit that the Porter County Sheriff's Department does not have any policies, express or otherwise, to retain custody of detainees who would otherwise be transferred to the IDOC. Plaintiff has offered no evidence to raise a genuine issue of material fact that the Porter County Sheriff's Department has express policy, a widespread practice or custom, or a person

with final policymaking authority that caused this alleged constitutional deprivation. Warden Widup's comment to Plaintiff that "[s]ometimes prisoner's[sic] fake to get to prison early" is insufficient to meet this burden.

Accordingly, the Court grants summary judgment in favor of Defendant Sheriff Lain in his individual and official capacities on any claim of a deprivation of an independent constitutional right arising out of an alleged failure to transfer Cook to the IDOC.

## B. Deprivation of Medical Care

Plaintiff alleges in the Second Amended Complaint:

> The Sheriff of Porter County's and the Porter County Jail's actions in failing to provide reasonable medical care or Chronic Care to [Cook] during his incarceration at the Porter County Jail, including but not limited to the care from August 29, 2009, constitutes deliberate indifference and a violation of [Cook's] rights against cruel and unusual punishment under the 8th Amendment to the United States Constitution.

Pl. Second Am. Compl. ¶ 27. In the Motion for Summary Judgment, Sheriff Lain argues that he is entitled to summary judgment on the alleged denial of medical care in his individual capacity because he had no personal involvement in Cook's medical care and in his official capacity because there is no evidence of an official custom, policy, or practice of denying detainees medical care that resulted in the alleged violation of Cook's constitutional rights. Sheriff Lain further asserts that the undisputed facts establish that Sheriff Lain, the only named Defendant, was not deliberately indifferent to Cook's medical needs. In response, Plaintiff argues that summary judgment is inappropriate because Plaintiff communicated with the jail regarding Cook's medical treatment and because Sheriff Lain had in place customs and practices that raise a genuine issue of material fact that detainees, after pleading guilty, are denied transfers when in need of medical attention and that

detainees do not receive adequate medical care at the jail. Plaintiff further argues that Cook did not receive adequate medical care at the Jail.

First, as set forth above, for Sheriff Lain to be liable in his individual capacity Plaintiff must demonstrate that Sheriff Lain personally participated in the alleged constitutional deprivation. *See Hildebrandt*, 347 F.3d at 1039; *see also Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."). The undisputed facts reveal that Sheriff Lain had no personal involvement in the alleged deprivation of medical care. Although Plaintiff had various telephone conversations with other members of the Jail staff regarding Cook's health, he had no conversations with Sheriff Lain. Moreover, Sheriff Lain was unaware that any members of the Jail staff were communicating with Plaintiff about Cook's medical condition and treatment; none of the Jail staff informed Sheriff Lain of these communications. Sheriff Lain was never provided with any information about Cook's medical condition or medical treatment. Sheriff Lain was never consulted regarding Cook's medical care at the Jail, he had no involvement in Cook's medical treatment at the Jail, and he did not make any decisions pertaining to Cook's medical care. Sheriff Lain relied upon the Jail's medical staff to assess the medical needs of inmates and to prescribe any treatment that may be required. Plaintiff does not address Sheriff Lain's individual liability in his response brief and offers no evidence to create a genuine issue of material fact of individual liability. Accordingly, the Court grants summary judgment in favor of Sheriff Lain in his individual capacity on the constitutional claim of a deprivation of medical care.

Second, as to the claim against Sheriff Lain in his official capacity, Plaintiff has not raised a genuine issue of material fact that there existed an official custom, policy, or practice of denying

detainees medical care that resulted in an alleged violation of Cook's constitutional rights. As set forth in Part A above, this official capacity claim constitutes a claim against the governmental entity itself and is governed by the municipal liability standards set forth in *Monell*. The governmental entity cannot be held liable for a § 1983 claim under a theory of respondeat superior. *Monell*, 436 U.S. at 691. To establish municipal liability, a plaintiff must demonstrate that the constitutional deprivation occurred because of an express policy, a widespread practice, or an action by a person with final policymaking authority. *See Lewis*, 496 F.3d at 656. In the Motion for Summary Judgment, Sheriff Lain argues that Plaintiff has not done so.

In response, Plaintiff does not assert that there was an express policy. Rather, Plaintiff argues that the Porter County Sheriff's Department had a custom and practice of requiring strict proof of an actual illness before Sheriff Lane would permit a transfer for medical care. To establish liability based upon a custom or widespread practice, Plaintiff must establish an unconstitutional pattern of conduct, including incidents other than the ones that involved Cook. *See Palmer*, 327 F.3d at 595-96. "When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Id.* (citing *Jackson v. Marion Cnty.*, 66 F.3d 151, 152 (7th Cir. 1995)). Although there are situations in which "a plaintiff can rely on h[is] own circumstances to establish the existence of a widespread practice, that task is necessarily difficult because 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Diab v. Chi. Bd. of Educ.*, 850 F. Supp. 2d 899, 925 (N.D. Ill. 2012) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008)). In order "to prevail on this type of claim, plaintiffs relying on their specific situations must weave those separate incidents

together into a cognizable policy." *Id.* (quoting *Phelan*, 463 F.3d at 790) (quotation marks and other citations omitted).

Plaintiff has failed to create a genuine issue of material fact regarding such a custom or practice. First, Plaintiff references Warden Widup's statement to Plaintiff that "[s]ometimes prisoner's[sic] fake to get to prison early." Pl. Br., Exh. K, ¶ 5.[4] However, this statement, even viewed in the light most favorable to Plaintiff, constitutes no more than Warden Widup's opinion; there is no attribution of this statement to anyone else or to the Sheriff's Department. Plaintiff also reasons that there existed a custom and practice of the Porter County Jail staff to assume that inmates were faking in order to prompt a transfer to receive health care based on Plaintiff's assertion that Medical Director White ignored at least three requests by Plaintiff to get Cook some help to alleviate his diarrhea, vomiting, and dehydration. Plaintiff contends that the Jail medical staff did nothing for a month. Thus, Plaintiff argues that there is sufficient evidence for a reasonable jury to conclude that the medical staff was waiting for an unreasonably long period of time to confirm that a transfer was needed. However, Cook's own circumstances are insufficient to create a genuine issue of material fact of a widespread custom to deprive detainees of medical care.

Finally, Plaintiff has not offered evidence establishing a causal connection between a decision of a final policymaker and the alleged violation of Cook's constitutional rights, nor does Plaintiff argue that there is one. Whether one has final policymaking authority is a question of state law. *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Indiana law provides that the county sheriff is the final policymaker for the care of the county jail and the prisoners there. *See* Ind. Code § 36-2-

---

[4] In fact, Plaintiff makes the following assertion in his brief: "Warden Widup told Tom Cook that Sheriff Lain was convinced that inmates would feign an illness in order to get 'easier time' in the prison system." Pl. Br., p.8. This restatement of Plaintiff's affidavit testimony is unsupported by the evidence.

13-5(a)(7) ("The sheriff shall . . . take care of the county jail and the prisoners there."); *Trout v. Buie*, 653 N.E.2d 1002, 1007 (Ind. Ct. App. 1995).[5] As set forth above, Plaintiff has offered no evidence connecting Sheriff Lain to the constitutional deprivations Cook allegedly suffered.

Third, Sheriff Lain argues that the undisputed facts establish that Sheriff Lain was not deliberately indifferent to Cook's serious medical needs. "The Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment, as incorporated by the Fourteenth Amendment, to impose a duty on states 'to provide adequate medical care to incarcerated individuals.'" *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012) (quoting *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976))). Prison officials violate this constitutional prohibition when they act with deliberate indifference to the serious medical needs of an inmate. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). A plaintiff asserting a claim of deliberate indifference must demonstrate (1) that his medical condition is "objectively, sufficiently serious" and (2) that the defendant acted with a "sufficiently culpable state of mind." *Id.* (citing *Farmer*, 511 U.S. at 834).

Assuming for purposes of this ruling, as does Sheriff Lain for purposes of his motion, that Cook's condition constituted an objectively serious medical need, the undisputed facts show that Sheriff Lain, the only named Defendant in this lawsuit, was not deliberately indifferent to Cook's medical needs because the undisputed facts establish that Sheriff Lain had no knowledge of Cook's medical condition and played no part in his treatment. In his response brief, Plaintiff argues that the

---

[5] The quotes included by Sheriff Lain from *Board of County Commissioners of Bryan County, Oklahoma v. Brown* on page 26 of the Memorandum of Law in support of the Motion for Summary Judgment and page 6 of the reply brief are not taken from the text of the decision but rather are taken from the syllabus, which "constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader." *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, fn.* (1997).

Jail's medical staff, who are not named defendants in this suit, were deliberately indifferent to Cook's medical needs. Again, liability under § 1983 cannot be premised on a claim of respondeat superior.[6]

For all of the foregoing reasons, the Court grants summary judgment in favor of Sheriff Lain in his individual and official capacities on Plaintiff's § 1983 claim for deprivation of medical care.

### C. Qualified Immunity

Sheriff Lain asserts that he is entitled to qualified immunity from civil liability on the constitutional claims brought against him in his individual capacity. "[G]overnmental actors performing discretionary functions enjoy qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *In re Escobedo v. Bender*, 600 F.3d 770, 778 (7th Cir. 2010) (quoting *Sallenger v. Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))). To assess whether a governmental actor is shielded from liability by qualified immunity, a court must consider "whether, taking the facts in the light most favorable to the plaintiff, the officers' conduct violated a constitutional right," and "whether the particular constitutional right was 'clearly established,' at the time of the alleged violation." *Id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In its discretion, the Court may consider which of the two inquiries to address first. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). In this case, there is no evidence that Sheriff Lain violated any of Cook's clearly established constitutional rights. Cook did not have a constitutional right to be transferred to another facility, and there is no

---

[6] Sheriff Lain goes on to argue that, even if Plaintiff were to establish that Sheriff Lain had any part in Cook's medical care, the undisputed facts establish that Cook was in fact provided with adequate care at the Porter County Jail and was not treated with deliberate indifference. In light of the Court's ruling, it is unnecessary to address this argument.

evidence that Sheriff Lain participated in any way in the medical care afforded to Cook, was deliberately indifferent to Cook's alleged serious medical need, or intended for Cook to suffer any injury. Thus, Defendant Sheriff Lain is entitled to qualified immunity on the § 1983 claims against him in his individual capacity.

### D. Supplemental State Law Negligence Claim

When a district court has only supplemental jurisdiction over remaining state claims, it may decline to exercise its jurisdiction over those claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims" when the federal claims are dismissed before trial. *Al's Serv. Ctr. v. BP Products N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (citing 28 U.S.C. § 1367(c)(3)). A district court should exercise its discretion to relinquish jurisdiction over supplemental state law claims remaining after the dismissal of federal claims subject to three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008).[7]

In the Second Amended Complaint, Plaintiff alleges that, pursuant to the Indiana Code and the Indiana Administrative Code, Sheriff Lain had a duty to provide adequate and reasonable medical care to Cook, that Sheriff Lane "by and through his staff" was negligent in the medical care provided to Cook during his incarceration, and that as a proximate result of this negligence, Cook

---

[7] Throughout his memorandum and reply briefs, Sheriff Lain repeatedly attributes quotations to cases in which the quoted language is not found. For each occurrence, it appears that Sheriff Lain takes a direct quotation from case 1 and places it in quotation marks in the brief. However, rather than identifying case 1 as the source of the quotation, Sheriff Lain instead cites only case 2, which is a decision that case 1 cited in support of the quoted language.

endured pain and physical injuries, pain and suffering, all until his death on November 26, 2009. Having considered Sheriff Lain's arguments and the relevant factors, as a matter of discretion, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim for negligence against Sheriff Lain. As stated at the outset of this opinion and order, a court's role on summary judgment is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50. The Court denies the Motion for Summary Judgment as to Plaintiff's negligence claim without prejudice and remands this action to state court.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion to Strike Report of Stephen B. Hanauer [DE 46], **GRANTS** Defendant's Motion to Strike Certain Exhibits and Portions of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [DE 52], and **GRANTS in part** and **DENIES in part without prejudice** Defendant's Motion for Summary Judgment [DE 40].

The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant David Lain and against Plaintiff Thomas Cook as father and next of kin of Alan Cook on Plaintiff's federal § 1983 claims only.

The Court further **DIRECTS** the Clerk of Court to modify the electronic docket to show that this cause of action was terminated as to Defendant Porter County, Indiana on January 24, 2011.

The Court **REMANDS** the remaining state law negligence claim to the Porter Superior Court.

SO ORDERED this 7th day of March, 2013.

  s/ Paul R. Cherry
_____
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record